## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | |
|---|---|
| DOUGLAS OAKLEY and NEILL ) | |
| RINKER, on behalf of themselves and ) | |
| a similarly situated class, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v.  ) | **Case No. 2:09-0107** |
| ) | **Judge Echols** |
| REMY INTERNATIONAL, INC., ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM

This a putative class action under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), filed by Plaintiffs Douglas Oakley ("Oakley") and Neill Rinker ("Rinker") on behalf of themselves and a similarly situated class of retired employees of Defendant Remy International, Inc. ("Remy").  In this action, Plaintiffs seek to enforce Remy's alleged contractual promise of vested life insurance benefits and vested lifetime medical, dental, and vision coverage to retirees, surviving spouses, and other eligible dependents.  Defendant has filed a "Motion to Dismiss for Improper Venue or, in the Alternative, Motion to Transfer for Forum Non-Conveniens" (Docket Entry No. 15), to which Plaintiffs have responded in opposition (Docket Entry No. 25).

### I.  FACTUAL BACKGROUND

Plaintiff Oakley, a resident of this district, and Plaintiff Rinker, a resident of Anderson, Indiana, are both former employees of Remy's Anderson, Indiana manufacturing plant.  Remy, which was formerly known as Delco-Remy International, is a Delaware corporation with its

principal place of business in Pendleton, Indiana and is a manufacturer and distributor of alternators, starters and hybrid motors for both heavy and light duty equipment.

Prior to September 1994, Plaintiffs were employed by General Motors Starter and Generator Division and were represented by the International Union, United Automobile, Aerospace & Agricultural Implement Workers Union ("UAW"). The terms of their employment were covered by a 1993 national collective bargaining agreement ("national agreement" or "Plan") between General Motors and the UAW.

In 1994, General Motors spun off certain operations to Remy, including the Indiana manufacturing plant. Under a Memorandum of Understanding, Remy assumed the 1993 national agreement between GM and the UAW which, among other things, provided for retiree health care and insurance benefits.

Oakley retired from his employment with Remy on June 1, 2001, and Rinker retired on April 1, 2003. In October 2009, Remy notified Oakley, Rinker and other Remy retirees that their healthcare program and life insurance benefits would be terminated effective December 31, 2009. On January 1, 2010, Remy terminated the health care coverage it had previously provided to the named Plaintiffs, as well as the retiree health care benefits it had provided to the retirees from its Mississippi plant and its Anderson, Indiana plant.

In support of its Motion to Dismiss or to Transfer, Remy has submitted the Affidavit of Gerald T. Mills ("Mills"), the Senior Vice President and Chief Human Resources Officer of Remy. In his Affidavit, Mills states that all of Remy's senior corporate executives are employed at its headquarters in Pendleton, Indiana, and that its former Chief Executive Officer, Senior Vice President of Human Resources, and former benefits attorney reside in Indiana. (Mills Aff. ¶¶ 4 & 5). Mills also states that Local 662 of the UAW represented the former Remy employees and is

based in Anderson, Indiana.  (Id. ¶ 6).  Mills further states that the negotiation of the UAW national agreement at issue in this case was negotiated in Anderson, Indiana,[1] that the Plan is administered in Indiana, and that all relevant decisions relating to the Plan were made in Indiana.  (Id.).

As for Remy's contacts with Tennessee, Mills states Remy is not registered as a foreign corporation in Tennessee and is not authorized to transact business in Tennessee.  Further, Remy has no physical presence in Tennessee, has no officers or facilities in Tennessee, has no employees based in Tennessee, owns no real property in Tennessee, and does not file a Tennessee income tax return or pay Tennessee franchise taxes.  (Id. ¶ 7).

With respect to the putative members of the class, Mills states that Remy has sixty-seven retirees who were UAW members and Plan participants, of which thirty-three reside in Mississippi and thirty reside in Indiana.  Of the four remaining retirees, one each resides in Alabama, Florida, Missouri, and Tennessee, but each worked for Remy in Indiana prior to retirement.  (Id. ¶ 10).

## II. <u>APPLICATION OF LAW</u>

Defendant moves to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, arguing that venue in this Court is improper.  As an alternative, Defendant requests that this case be transferred to the United States District Court for the Southern District of Indiana for the convenience of the parties pursuant to 28 U.S.C. § 1404(a).

**A. <u>Motion to Dismiss for Improper Venue Under ERISA and LMRA</u>**

Plaintiffs have the burden of proving venue is proper and, in considering a Motion to Dismiss for improper venue, the Court accepts the Plaintiffs' well pleaded allegations as true, construes the

---

[1]Plaintiffs have submitted the Declaration of Cal Rapson ("Rapson"), Vice President and Director of UAW's General Motors Department, which disputes this contention.  In his Declaration, Rapson states that all of the negotiation with respect to the national agreement between General Motors and the UAW took place in Detroit, Michigan.  (Rapson ¶ 7).  For present purposes, the Court accepts this assertion as true.

reasonable inferences from those allegations in Plaintiffs' favor, and resolves factual disputes in Plaintiffs' favor.  Crouch v. Guardian Angel Nursing, Inc., 2009 WL 3738095 at *1 (M.D. Tenn. 2009); Miller v. Oceanside Police Dept., 2009 WL 3327217 at *1 (E.D. Tenn. 2009). Both ERISA and the LMRA contain venue provisions.

The venue provision of Title I of ERISA allows plaintiffs to lay venue "where the plan is administered, where the breach took place, or where a defendant resides or may be found[.]"  29 U.S.C. § 1132(e)(2).  The statute is written in the disjunctive and, therefore, Plaintiff need only establish that venue is proper under one of the criteria.

In this case, Plaintiffs meet the venue provision of ERISA because an alleged breach took place in this district.  According to the Complaint and Plaintiff Oakley's Affidavit, he is a resident of this district who has received medical care and prescription drug coverage paid for by Remy in Tennessee, and he has been denied or will be denied benefits while a resident of this district because of the actions of Remy.  While Defendant points to some cases which indicated that a breach for purposes of ERISA occurs where the decision to suspend benefits was made or from where benefit checks are sent, this Court has previously held that "the weight of the cases hold that where, as here, a claim is refusal to pay benefits under the terms of an ERISA plan, the breach occurs in the place where the plaintiff is to receive his or her benefits." Canada v. American Airlines, Inc. Retirement Plan, 2009 WL 2176983 at *3 (M.D. Tenn. 2009).  "Such rulings are in keeping with the notion that ERISA provides expanded venue choices, it being  the intent of Congress to give plaintiff in ERISA actions ready access to Federal court." Id. (internal quotation marks omitted).

In reaching the conclusion that venue over the ERISA claim is proper, the Court has considered Defendant's argument that this Court does not have personal jurisdiction over Remy because Remy does not have sufficient minimum contacts with Tennessee.  Generally speaking, in

4

order for this Court to have personal jurisdiction over a defendant, the plaintiff must show the defendant has sufficient minimum contacts with Tennessee such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(citation omitted); see, Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003).   Minimum contacts exist where the Defendant purposefully avails itself of the privilege of conducting activities within the forum state, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985), and in such circumstances a Defendant "should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

However, unlike some Circuits,[2] the Sixth Circuit has held that "when a federal court exercises jurisdiction pursuant to a national service of process provision, it is exercising jurisdiction for the territory of the United States and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States." Med. Mut. v. DeSoto, 245 F.3d 561, 567-68 (6th Cir. 2001).   Thus where the Court's jurisdiction is invoked under ERISA, "'the minimum contact analysis, as a limitation on state extra-territorial power, [is] simply inapposite.'" Id. (quoting, Haile v. Henderson Nat. Bank, 657 F.2d 816, 826 (6th Cir. 1981)).

Turning to Plaintiffs' LMRA claim, Section 301 of the LMRA provides that suits for violations of labor contracts "may be brought in any court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of

---

[2]In a footnote to its Memorandum, Defendant notes that the "[c]ircuits are split as to whether the nationwide service of process authorized by ERISA § 502(e)(2) confers personal jurisdiction over a defendant in any district court if the defendant has sufficient minimum contacts with the United States."  (Docket Entry No. 16 at 5 n.6).  Defendant then cites Peay v. Bellsouth Med. Assistance Plan, 205 F.3d 1206, 1211 (10th Cir. 2000) for the proposition that due process requires more than just minimum contacts with the United States as a whole, but neglects to cite the more recent and controlling decision in DeSoto.

the parties." 29 U.S.C. § 185(a). The purpose of this venue provision "'was not to limit, but to expand the availability of forums for the enforcement of contracts made by labor organizations.'" Moore v. Rohm & Haas Co., 446 F.3d 643, 645 (6th Cir. 2006)(quoting, Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 508-09 (1962)). This Court has already concluded that it has jurisdiction over Remy for purposes of Plaintiffs' ERISA claim and therefore concludes that it has venue over the LMRA claim.

**B.  Motion to Transfer Under 28 U.S.C. § 1404(a)**

In the event that the Court chooses not to dismiss this action for improper venue, Defendant requests that this case be transferred to the Southern District of Indiana under  28 U.S.C. § 1404(a) which provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A decision on whether to transfer lies within the broad discretion of the trial court. Bunting ex rel. Gray v. Gray, 2 Fed. Appx. 443, 448 (6th Cir. 2001).

"[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric 'interest of justice.'" Moore v. Rohm & Haas Co., 446 F.3d 643, 647 (6th Cir. 2006)(citation omitted). Therefore, in deciding whether the present forum is inconvenient, the Court considers a number of factors, including (1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and (6) the plaintiff's choice of forum. Id.; Kerobo v. Southwestern Clean Fuels, Corp., 285 F.3d 531, 537 (6th Cir. 2002); Moses v. Bus. Card

Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991); Moeckel v. Caremark Rx, Inc., 385 F.Supp.2d 668, 686 (M.D. Tenn. 2005).

The convenience of the witnesses is often considered to be the most important factor when determining which forum is the most convenient. See, Romanowski v. RNI, LLC, 2007 WL 323019 at *3 (N.D. Ca. 2007); American Steamship Owners v. LaFarge North America, Inc., 2007 WL 214408 at *6 (S.D.N.Y. 2007); Olberding v. Union Pacific R. Co., 2007 WL 148816 at *2 (W.D. Mo. 2007). The determination of the convenience of witnesses is not merely a "head count," but includes a consideration of the importance of each witness and "includes both non-party witnesses outside the scope of the Court's subpoena power and the geographic location of any witnesses likely to testify in the case." Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 2007 WL 412429, at *8 (S.D. Cal. 2007).

According to the evidence which has been submitted, the majority of likely witnesses in this case, including both party-controlled and non-party-controlled witnesses, are located in Indiana. This includes current and former corporate executives of Remy, its benefits attorney, the Local 662 union leader, and 30 of the 67 retirees who would make up the putative class. In contrast, the only witness who has been identified with any connection to Tennessee is Plaintiff Oakley.

The residence of the parties also favors Indiana. Remy is headquartered and does business in Indiana and Plaintiff Rinker is an Indiana resident. In contrast, the only party who has a residence in Tennessee is Plaintiff Oakley.

The location and sources of proof also favor transfer. The documents underlying the spin-off and the Plan are located either in Michigan[3] and/or Indiana, and the relevant employee records are

---

[3]In his Declaration, Rapson, the UAW Vice President, states that "voluminous documents" relating to the negotiation of the Plan are located in Detroit, Michigan and that the UAW consents to producing these documents in the Middle District of Tennessee. There is no suggestion, however,

located in Indiana.  Plaintiffs point to no records that are maintained in Tennessee, except perhaps the personal records of Plaintiff Oakley.

The Court recognizes that "[i]n the modern era of photocopying, scanning, fax machines, e-mail, overnight delivery services, etc., the location of documents should be considered a neutral factor when deciding to transfer venue under § 1404(a).  Walker v. Jon Renau Collection, Inc., 423 F.Supp.2d 115, 118 n.3 (S.D.N.Y. 2005)." (Id. at 4).  Were the plan documents the only expected proof in this case, the Court would be inclined to find this to be a neutral factor in the transfer analysis.  However, the record reveals that the vast majority of putative class members signed releases which purport to release Remy from its alleged contractual obligation to provide benefits and received funds for executing those releases.  Plaintiffs admit that "the primary focus of this litigation will be the validity of those releases" and that "[a]djudication of this issue will require testimony and documents from the individual retirees."  (Docket Entry No. 25 at 4).  But only one of the retirees resides in this district and nearly half reside in Indiana.  This factor, too, favors transfer.

Further, the location of the events which gave rise to the dispute favors transfer.  "A 'fundamental principle' guiding the Court's analysis of a motion to transfer is that 'litigation should proceed 'in that place where the case finds its center of gravity.'" North American Demolition Co v. FMC Corp., 2005 WL 1126747 at *2 (N.D. Ohio 2005)(citation omitted).  The center of gravity in this case is either Indiana or Michigan.  Indiana could be viewed as the center of gravity, as that is where the Plan is administered and decisions were made to curtail benefits, and that is where nearly half of those affected by the changes reside.  Alternatively, Michigan could be viewed as the

---

that the UAW would not consent to producing those documents in the Southern District of Indiana were the case transferred there.

center of gravity of the case because to prevail on their claim that they have a vested right to benefit, Plaintiffs must show that "the defendant and the union intended to include a right to lifetime benefits when they negotiated the CBAs at issue," Yolton v. El Paso Tenn. Pipeline Co., 435 F.3d 571, 578 (6th Cir. 2006), and that negotiation occurred in Michigan.  In any event, the center of gravity of this case is most certainly not Tennessee.

The Court next turns to a consideration of the "public-interest factors and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" Langley v. Prudential Mortg. Capital Co., 546 F.3d 365, 370 (6th Cir. 2008)(citation omitted).  These public interest factors include such things as the local interest in having localized issues decided at home and the familiarity of the forum with the law that will govern the case.  See, In re Nintendo Co., 589 F.3d 1194, 1198 (Fed. Cir. 2009); Ravelo Monegro v. Rosa, 211 F.3d 509, 512 (9th Cir. 2000).

On the one hand, the Southern District of Indiana has a more significant interest in deciding this matter in the sense that the primary issue involves an Indiana-based company's decision to modify a retirement benefit plan administered in Indiana and primarily affecting Indiana retirees, although the Court discounts this factor somewhat because the federal questions presented lessen localized concerns.  See, Watson v. Hortman, 2009 WL 900744 at *2 (E.D. Tex. 2009)(discounting public interest factor because same federal law would govern any court which hears case); Gourmet Video, Inc. v. Alpha Blue Archives, Inc., 2008 WL 4755350 at * 8 (D.N.J. 2008)(discounting public interest factor because in federal question case federal law applies).  On the other hand, the contract language at issue in this case has already been addressed by the Sixth Circuit in Wood v. Detroit Diesel Corp., 213 Fed. Appx. 463 (6th Cir. 2007) and the Sixth Circuit has indicated that, all things being equal, it makes some sense to apply the same law to the same contractual provisions, Reese v. CNH America LLC, 574 F.3d 315, 320 (6th Cir. 2009).  But all things are not equal in this case

9

because the majority of factors to be considered under Section 1404(a) weigh heavily in favor of transfer.[4]

Finally, the Court observes that a Plaintiff's choice of forum is entitled to some deference, Lewis ACB Business Servs., Inc. 135 F.3d 389, 413 (6th Cir. 1998), and perhaps even "greater deference" when a claim involves ERISA. Compare, Shanechian v. Macy's, Inc., 251 F.R.D. 287, 290 (S.D. Ohio 2008)(collecting cases indicating that there is a heightened level of deference for plaintiff's choice of forum in ERISA cases) with George v. Kraft Foods Global, Inc., 2007 WL 853998 at *5 (S.D. Ill. 2007)("the court is not aware of any controlling authority in support of Plaintiffs' contention that an unusual degree of deference must be accorded to a plaintiff's chosen forum in an ERISA action").   It has also been observed, however, that where the case is brought as a class action, the plaintiff's choice of forum may be entitled to little deference, see, George, 2007 WL 853998 at *5 (collecting cases), and may also be entitled to little deference where the plaintiff's chosen forum lacks any significant contact with the underlying cause of action, see, Hanley v. Omarc, Inc., 6 F.Supp.2d 770, 775 (N.D. Ill. 1998)(collecting cases).  Regardless, the deference is not absolute, even in ERISA cases, and a transfer of such an action may be ordered under 28 U.S.C. § 1404(a).  See, Reese, 574 F.3d at 321 (suggesting that while district court decided not to transfer ERISA case, it could easily have decided to transfer case and affirmance of the denial was based solely upon the fact that the appellate court applies an abuse of discretion standard);  Moore, 446 F.3d at 647 (while district court can transfer ERISA and LMRA cases, it should not make that

---

[4]This case is markedly different from Reese.  At the time the transfer issue was before the district court in Reese, the district judge had "a parallel lawsuit involving the same types of claims under different CBAs against two successors in interest to [the employers]." Id. at 319.  In such circumstances, "it makes sense to resolve the health benefits of both sets of retirees – both of whom worked in the same plant for the same effective employer – under the same circuit law and in front of the same district court judge," a judge who had "a leg up on the legal and factual issues presented[.]" Id. at 420.

decision *sua sponte*, but instead should allow the parties to brief the issue); In re Amendt, 169 Fed.

Appx. 93, 94 (3d Cir. 2006)(district court's decision to transfer ERISA action not clearly erroneous).

In sum, the relevant factors to be considered weigh heavily in favor of transferring this case

to the Southern District of Indiana, notwithstanding the deference given to the Plaintiffs' choice of

forum.  The only apparent connection between this case and Plaintiffs' causes of action is the

happenstance that one of the named Plaintiffs, out of a putative class of sixty-seven, chose to retire

here.

### III.  CONCLUSION

On the basis of the foregoing, Defendant's "Motion to Dismiss for Improper Venue or, in

the Alternative, Motion to Transfer for Forum Non-Conveniens" (Docket Entry No. 15) will be

denied insofar as Defendant seeks dismissal of this action, but the alternative request that the case

be transferred to the Southern District of Indiana will be granted.

An appropriate Order will be entered.


ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE